PAUL L. REIN, Esq. (SBN 43053)
CELIA McGUINNESS, Esq. (SBN 159420)
LAW OFFICES OF PAUL L. REIN
200 Lakeside Drive, Suite A
Oakland, CA 94612
Telephone: 510/832-5001
Facsimile: 510/832-4787

Attorneys for Plaintiff
BERTHA JOHNSON

LOUIS A. LEONE, ESQ. (SBN: 099874)
CLAUDIA LEED, ESQ. (SBN: 122676)
STUBBS & LEONE
A Professional Corporation
2175 N. California Blvd., Suite 900
Walnut Creek, CA 94596
Telephone: (925) 974-8600
Facsimile: (925) 974-8601

Attorneys for Defendant
PERALTA COMMUNITY COLLEGE DISTRICT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| BERTHA JOHNSON, | Case No.: C08-04152 JCS |
|---|---|
| Plaintiff, | |
| vs. | SETTLEMENT AGREEMENT AND [~~PROPOSED~~] ORDER |
| PERALTA COMMUNITY COLLEGE DISTRICT; DOES 1 through 10, inclusive, | |
| Defendants. | |

1. Plaintiff BERTHA JOHNSON filed a Complaint in this action on November 2, 2008, to obtain recovery of damages for her discriminatory experiences, denial of access, and denial of her civil rights, and to enforce provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., the Rehabilitation Act of 1973, and California civil

rights laws against Defendant PERALTA COMMUNITY COLLEGE DISTRICT, (Hereinafter referred to as the "DISTRICT") relating to the condition of their public accommodations as of November 21, 2008, and continuing. Plaintiff has alleged that the DISTRICT violated Title II of the ADA, the Rehabilitation Act of 1973, California Government Code sections 11135 and 4450, and sections 51, 52, 54, and 54.1 by failing to provide full and equal access to their programs, services and activities at Berkeley City College, 2050 Center St., Berkeley, California.

2. The DISTRICT denies the allegations in the Complaint and by entering into this Settlement Agreement and Order does not admit liability to any of the allegations in Plaintiff's Complaint filed in this action. Plaintiff BERTHA JOHNSON and the DISTRICT hereby enter into this Settlement Agreement and Order for the purpose of resolving the injunctive relief aspects of this lawsuit without the need for protracted litigation and without the admission of any liability.

## I. JURISDICTION:

3. The parties to this Settlement Agreement agree that the Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 for alleged violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. and the Rehabilitation Act of 1973; and pursuant to supplemental jurisdiction for alleged violations of California Government Code sections 11135 and 4450, and sections 51, 52, 54, and 54.1.

4. In order to avoid the costs, expense, and uncertainty of protracted litigation, the parties to this Settlement Agreement agree to entry of this Order to resolve all claims regarding injunctive relief raised in the Complaint filed with this Court. Accordingly, they agree to the entry of this Order without trial or further adjudication of any issues of fact or law concerning Plaintiff's claims for injunctive relief. Issues of damages, and attorney fees, litigation expenses, and costs, will be the subject of further negotiation and/or litigation.

WHEREFORE, the parties to this Settlement Agreement hereby agree and stipulate to the Court's entry of this Settlement Agreement and Order, which provides as follows:

## II. CORRECTIVE WORK

**1. Scope of Corrective Work:**

The DISTRICT agrees that it will perform the corrections and modifications as set forth in the BARRIER REMOVAL PLAN AT BERKELEY CITY COLLEGE attached hereto as EXHIBIT A and the list of other actions set forth in EXHIBIT B. In addition the DISTRICT has installed power operated doors on doors listed in EXHIBIT C.

**2. Timing of Corrective Work:**

The completion of the corrections and modifications set forth in THE BARRIER REMOVAL PLANS AT BERKELEY CITY COLLEGE attached hereto as EXHIBIT A and the contingencies set forth in EXHIBIT B will be completed by October 15, 2010.

In the event that the DISTRICT is unable to complete the corrective work and institute the contingencies set forth in EXHIBIT A and EXHIBIT B notwithstanding a good faith effort to complete the work, the DISTRICT'S counsel will notify Plaintiffs' counsel in writing within 14 business days of any delay and the cause for the delay. Plaintiff will not unreasonably withhold consent for a reasonable extension of time to complete the modifications and barrier removal, but maintains the right to seek a motion to enforce this Order, including the right to seek statutory attorney fees, in the event the modifications and corrective work are not completed by October 15, 2010. (Resolution of disputes regarding the scope and timing of corrective work are detailed below in Section IV.)

### III. DAMAGES AND ATTORNEYS' FEES and LITIGATION COSTS:

Plaintiff and the DISTRICT have not reached an agreement regarding plaintiff's claims for damages, attorneys' fees, litigation expenses and costs. These matters will be the subject of further negotiations and/or litigation. The parties hereby agree and stipulate that the Court not dismiss this case because these issues remain unresolved.

### IV. DISPUTE RESOLUTION

1. The parties will negotiate in good faith to resolve any dispute relating to the interpretation or implementation of this Agreement.

2. In the event plaintiff believes that the DISTRICT is not in compliance with the terms of this Agreement, plaintiff will notify defendant in writing of the alleged noncompliance.

3. The DISTRICT will have thirty (30) days, following receipt of the notification to respond to plaintiff in writing concerning the alleged violations or noncompliance.

4. Following plaintiff's receipt of the DISTRICT'S response, if any, to any alleged violations or noncompliance, the Parties will negotiate in good faith for at least fifteen (15) days to resolve their differences. The Parties agree to request that the Northern District Court's ADR office mediate any compliance dispute brought pursuant to this agreement.

5. Plaintiff agrees not to file any motion to enforce this Agreement until this dispute resolution process has been completed and then only if the alleged violations or noncompliance have not been corrected as a result of the dispute resolution effort by the Parties. Any motion to enforce this Agreement will be brought in the court in which this action is currently pending.

6. In the event it becomes necessary for plaintiff or the DISTRICT to incur costs and/or attorneys' fees to enforce the provisions of this Agreement, the prevailing party in any enforcement litigation will be entitled to reasonable attorney's fees and costs, in accordance with the standards set forth in *Christianberg Garment Company v. EEOC*, 434 U.S. 412 (1978) and Civil Code § 55.

## V. CONTINUING JURISDICTION

The Court shall maintain jurisdiction over the lawsuit, including jurisdiction to enforce the terms of this Agreement and to otherwise oversee compliance with the terms of this Agreement and for such additional time as may be necessary to resolve the remaining issues.

## VI. Miscellaneous

a. **Entire Agreement**

This Agreement expresses and constitutes the complete and final understanding of the Parties with respect to the subject matter of this Agreement. The parties hereto understand and agree that the terms of this Agreement supersede any prior discussions, understandings, or agreements, whether orally or in writing, between them related to the subject matter hereof.

### b. Counterparts

This Agreement may be executed in counterparts, each of which shall be considered an original, but all of which, taken together, shall constitute one and the same instrument.

### c. Interpretation

The language of this Agreement shall be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties. The headings in this Agreement are solely for convenience and shall not be considered in its interpretation. Where required by context, the plural includes the singular and the singular includes the plural, and the terms "and" and "or" shall mean "and/or." This Agreement is the product of negotiation and joint drafting so that any ambiguity shall not be construed against any party.

### d. Severability

In the event any portion of this Agreement is deemed to be unenforceable, or is in conflict with applicable law, the remainder of this Agreement will be enforced and will remain in full force and effect.

### e. Additional Documents

To the extent any documents are required to be executed by any of the Parties to effectuate this Agreement, each party hereto agrees to execute and deliver such and further documents as may be required to carry out the terms of this Agreement.

### f. Authority to Bind

Each signatory to this Agreement certifies that it, he or she is fully authorized by the party it, he or she represents to enter into the Agreement, to execute it on behalf of the party represented, and to legally bind that party thereto.

Dated: April 30, 2010 _____
Plaintiff
BERTHA JOHNSON

Dated: Apr. 30, 2010 _____
Defendant
PERALTA COMMUNITY COLLEGE DISTRICT
THUY THI NGUYEN GENERAL COUNSEL

**APPROVED AS TO FORM:**

**For Defendant:**

Dated: April 30, 2010

CLAUDIA LEED
STUBBS & LEONE

_____
Attorneys for Defendant
PERALTA COMMUNITY COLLEGE DISTRICT

**For Plaintiff:**

Dated: April 30, 2010

PAUL L. REIN
LAW OFFICES OF PAUL L. REIN

_____
Attorneys for Plaintiff
BERTHA JOHNSON

Dated: May 18, 2010



Judge Joseph C. Spero

# EXHIBIT A

THE BARRIER REMOVAL PLANS AT BERKELEY CITY COLLEGE are hereby attached and incorporated into this agreement. These plans call for the following corrections:

1. Reposition and Alteration of Accessible desks and seating in the Auditorium (Detail 1, First Sheet)

2. Relocation of Bulletin boards (Detail 10, First Sheet)

3. Relocation of fire alarm pull stations (Detail 9, First Sheet)

4. Relocate annuciator (Detail 9, First Sheet)

5. Recess paper towel dispenser and disposal bin (Detail 9 First Sheet—Bobrick B-38034)

6. Correct floor slope around drains in 2nd. 3rd, and 4th floor men's restrooms (Detail 6 First Sheet)

7. Reposition controls at accessible lab stations in rooms 521 and 522 to correct reach range (Detail 2, Sheet 2)

8. Remove sharp edge of protruding angle at stage floor edge (Detail 1 Sheet 2)

9. Provide additional dictionary stand and map stand at accessible height. (Detail 2, Sheet 2)

10. Add accessible buzzer and signage (Detail 1, Sheet 2)

11. Provide accessible computer work station in Learning Resource Center (Detail 8, page 2)

\\\
\\\
\\\
\\\
\\\
\\\
\\\

# EXHIBIT B

The DISTRICT further agrees to the following:

1. <u>Fire rated door opening force pressure</u>: On an annual basis the Berkeley College maintenance staff will inspect and adjust as necessary the opening door pressure for all fire rated doors not equipped with mechanical door opening mechanisms, to a door opening pressure of between 5 to 7 pounds. The annual maintenance schedule is subject to change under the following conditions: Within six months following the execution DISTRICT agrees to review the door pressure maintenance schedule of Fire Rated doors. Defense counsel will report the result of the review to plaintiff's counsel in writing. Upon the six month review if it appears that the fire rated door opening pressure has fluctuated to the point that more frequent maintenance is required, the DISTRICT will agree to a semi-annual maintenance schedule.

2. <u>Acquisition of Group study room table:</u> The DISTRICT will acquire one accessible table for one of the group study rooms in the Library. The DISTRICT will post a sign on the door indicating that disabled students have priority with respect to using this study room for studying, taking tests, meeting with instructors and tutors whether these tutors are privately retained or work for the college. Library staff will be trained to assist disabled students in securing the disabled priority use of the designated study room and maintain a sign in sheet for the study room. As necessary PSSD will assist disabled students in securing the designated Group Study room for taking tests. The college will direct instructors that the designated Group Study room should be used for meeting with disabled students as necessary. In addition, the college will direct instructors to use conference rooms to meet with disabled students as necessary.

3. <u>Programs & Services for Students with Disabilities ("PSSD" procedures regarding provision of class presentation aides:</u> The Berkeley City College PSSD will institute a policy whereby students requiring the use of wheelchairs to ambulate will be accommodated with respect to the provision of accessible classroom lecterns, podiums and other presentation equipment when necessary to make a class presentation. The PSSD accommodation check list

forms will be changed to include an inquiry as to whether a disabled student using a wheelchair to ambulate requires accommodations to make class presentations. The form will ask "yes/no or do not know." No matter what the response is, the PSSD office will contact the instructor of each class the disabled student is enrolled in and make arrangements as necessary with the instructor to insure that the disabled student is provided with the accommodations necessary to make classroom presentations.

    4. Acquisition of one accessible copy machine: The DISTRICT will acquire one accessible copy machine and place the copy machine in the Financial Aid Office.

    5. Relocation of accessible computer in Financial Aid office: The DISTRICT will relocate an accessible computer to the lowered counter in the Financial Aid Office. This lowered counter already exists and will continue to be signed and designated as the location where disabled students are to be provided Financial Aid services. Financial Aid staff will be trained to provide services to disabled students at this lowered counter space. 9.

    6. Installation of off-set hinge for Multi-Media room 211: The DISTRICT agrees to install off-set hinges on this door.

    7. Maintenance of clear floor space in classrooms: The DISTRICT agrees to maintain as reasonably possible, clear floor space in classrooms. Plaintiff recognizes that the classrooms at the Berkeley City College are often crowded and that the furniture in the classrooms is movable and is often repositioned. In an effort to maintain the required 36" clearance between desk aisles, blue tape will be applied to classroom floors to mark the alignment of desks. This does not apply to the Art class. Maintenance staff will be instructed to reposition desks to align with the blue tape on a weekly basis. The blue tape should be replaced on an annual basis or as needed.

    8. Strike Side Clearance of restroom doors: The DISTRICT agrees that trashcans obstructing the required strike side clearance will be moved or removed as necessary.

    9. Accessible Toilet Center Line corrections: The DISTRICT agrees to correct the toilet center line distance to meet the requirement that the toilets be 18" on center from the permanent

wall. This will be accomplished as necessary by furring out the side grab bars. However, those toilets that would require actual reinstallation to be placed 18" on center will not be moved.

10. <u>Accessible Toilet paper dispenser placement corrections</u>: The DISTRICT agrees to set as necessary at a distance of 12" in front of the face of the toilet, toilet paper dispensers in the accessible toilet stalls.

11. <u>Auditorium accessible route signage</u>: The DISTRICT agrees to install accessible route signage directing disabled students to use the north aisle of the auditorium.

12. <u>Automatic door openers</u>: The DISTRICT has installed a number of automatic door openers. The DISTRICT agrees to maintain the automatic door openers. A list of the doors retrofitted with the automatic door openers is attached to this Agreement as EXHIBIT C.

13. <u>Book store</u>: The DISTRICT agrees to direct the owner of the Berkeley City College Bookstore, a private vendor, to adjust its inventory and fixtures to create and maintain the required 36" clear floor space.

14. <u>Art Class</u>: The DISTRICT agrees that when art students are using easels and sitting on benches in front of the easels, the easels and the benches may block the required clear floor space in the Berkeley City College Art Classroom. The DISTRICT agrees that Berkeley City College Art instructors will be directed that when students are required to circulate in the classroom for the purposes of reviewing each other's art work placed on easels, the instructor will insure that the required 36" clear floor space will be provided. The student requiring the use of a wheelchair to ambulate in the Art Class room is not expected nor required to request that the easels and benches be moved to provide the required clear floor space.

\\\
\\\
\\\
\\\
\\\
\\\
\\\

Settlement Agreement and Order
10
C08-04152 JCS

# EXHIBIT C

## BERKELEY CITY COLLEGE DOORS WITH AUTOMATIC DOOR OPENERS

Attached hereto are the DSA approved plans regarding the installation of automatic door openers on the designate doors. These door openers were installed prior to the execution of this agreement.